IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VREJ S.G.,<br><br>    Petitioner,<br><br>  vs.<br><br>CHRISTOPHER CHESTNUT, *et al.*,<br><br>    Respondents. | Civil No. 1:26-cv-04428-MWJS<br>ORDER GRANTING PETITION FOR<br>WRIT OF HABEAS CORPUS<br><br>A# 212-109-986 |

## **INTRODUCTION**

Petitioner Vrej S.G.[1] is a noncitizen who is currently detained at the California

City Detention Center pending the outcome of his removal proceedings.  He seeks a

writ of habeas corpus pursuant to 28 U.S.C § 2241, arguing that his mandatory

detention—which began nearly four years ago after the government sought to remove

him from the United States following his convictions for various crimes—has become

unlawful based on factual and legal developments which he claims have eliminated the

conditions justifying his detention.  For the reasons that follow, the court agrees and

GRANTS his petition for habeas corpus.

---

[1] For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Correctional Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

## BACKGROUND

Petitioner is an Armenian Christian who fled religious persecution in his home country of Iran and entered the United States in 2008 as part of the United States Refugee Admissions Program.  The following year, he became a Lawful Permanent Resident (LPR).  And for years afterwards, he found success here.  He secured employment, working as a grocery clerk, car washer, and body shop mechanic; got married to his wife; and welcomed a U.S. citizen son (who is now approximately thirteen years-old).  Dkt. No. 1, at pg. 9; Dkt. No. 1-2, at pg. 2.

But like so many, Petitioner's progress was derailed by drug addiction. Beginning in 2020, he lost his job, began living on the streets, and engaged in criminal activity that resulted in several convictions.  Two of those convictions are relevant here. In 2021, Petitioner was convicted of misdemeanor contempt for violating a protective order, in violation of Cal. Penal Code § 166(c)(1), pursuant to a guilty plea into which he entered without being apprised of the potential adverse immigration consequences by his defense counsel.  Dkt. No. 6-3, at pg. 9; Dkt. No. 1-2, at pg. 3.  And in 2022, he was convicted of felony assault with a deadly weapon not involving a firearm, in violation of Cal. Penal Code § 245(a)(1), and sentenced to a two-year prison term.  He was released directly into the custody of immigration authorities in October 2022 and placed into removal proceedings.  He has remained in immigration detention ever since that time—a span of pre-removal detention that now exceeds 43 months.  During that time,

Petitioner has become "devoted to [his] sobriety and hope[s] to become a protective member of society and [to] reunite with [his] son," whom Petitioner has not seen since he was eight years old.  Dkt. No. 1-2, at pgs. 2-3.

When Petitioner was placed into immigration custody, he was issued a Notice to Appear charging him with removability from the United States.  He sought relief in his immigration case through applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) after being placed into removal proceedings.  He originally represented himself in those proceedings "despite clear indicia that he was incompetent" and subsequent diagnoses of bipolar disorder, neurocognitive disorders, and major depressive disorder.  Dkt. No. 1, at pgs. 11-12.  So although an immigration judge (IJ) denied Petitioner's asylum, withholding, and CAT applications and ordered him removed in April 2023, that decision was reversed by the Board of Immigration Appeals (BIA) in February 2024.  On remand, "the IJ found [Petitioner] to be incompetent and ordered the provision of a Qualified Representative pursuant to *Franco-Gonzalez v. Holder*, No. CV-10-02211, 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014)."  *Id.* at pg. 12.

Now proceeding with the assistance of counsel, Petitioner again proceeded through the removal process.  This time, he was charged with removability under 8 U.S.C. § 1227(a)(2)(A)(iii)—a section of the Immigration and Nationality Act (INA) which provides that any noncitizen "convicted of an aggravated felony at any time after

admission is deportable"—based on his conviction for felony assault with a deadly weapon not involving a firearm in violation of Cal. Penal Code § 245(a)(1).  But in September 2024, the Ninth Circuit ruled that § 245(a)(1) was not a "crime of violence." *United States v. Gomez*, 115 F.4th 987 (9th Cir. 2024), *aff'd en banc*, 165 F.4th 1199 (9th Cir. 2026).  And under Ninth Circuit precedent, that meant that the offense was not categorically an "aggravated felony" sufficient to render Petitioner removable under § 1227(a)(2)(A)(iii).  *See Rodriguez-Castellon v. Holder*, 733 F.3d 847, 852 (9th Cir. 2013).

Petitioner's counsel accordingly filed a motion to terminate Petitioner's removal proceedings, arguing that he was no longer removable under the INA.  After being given several opportunities to file new charges of removability against Petitioner, the government did so in November 2024, charging Petitioner as deportable under 8 U.S.C. § 1227(a)(2)(E)(ii)—the section of the INA providing for the removal of a noncitizen "who at any time after admission is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued"—based on his contempt conviction, under Cal. Penal Code § 166(c)(1), for violating a protective order.

With the new charge of removability added, Petitioner's removal proceedings picked up again.  And during this time period, new developments occurred with

respect to Petitioner's detention as well:  on March 27, 2025, he was granted a bond

hearing based on his membership in the *Franco-Gonzalez* class at which the government

was required to prove dangerousness or risk of flight by clear and convincing evidence.

Following that hearing, an IJ denied bond based on a finding of dangerousness;

Petitioner appealed the decision to the BIA, which the BIA affirmed in September 2025.

But only a few months later, Petitioner's removal proceedings were upended by

yet another major development.  On December 5, 2025, a California state court vacated

Petitioner's contempt conviction pursuant to Cal. Penal Code § 1473.7(a)(1), finding that

errors both procedural and substantive—including his defense counsel's failure to

inform him of the potential immigration consequences of his guilty plea—had deprived

Petitioner of his rights under the United States Constitution.  That meant that the

government's alternative basis for removal, 8 U.S.C. § 1227(a)(2)(E)(ii), now appeared to

have been undermined.  And an IJ concluded it was.  Based on these developments—

the "change in caselaw" surrounding Petitioner's assault conviction, and the "[post-

conviction relief] granted" with respect to his contempt conviction—the IJ concluded

that the government could not sustain either charge of removability and that Petitioner

therefore was "not removable."  Dkt. No. 6-2, at pg. 8.  Accordingly, the IJ terminated

his removal proceedings on April 8, 2026.  *Id.* at pg. 11.

The termination of Petitioner's removal proceedings did not, however, end his

detention.  Instead, Immigration and Customs Enforcement (ICE) informed Petitioner

that he would be kept in detention while the government pursued an appeal of the IJ's April 8 order.  Petitioner requested a hearing pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999), at which he could challenge the basis for his mandatory detention pursuant to § 1226(c).  But his challenge was rejected based on the IJ's determination that Petitioner had "not submitted any new, previously unavailable evidence that his circumstances have changed materially such that the Court can reconsider the March 27, 2025, bond determination."  Dkt. No. 6-1, at pg. 1.  As a result, Petitioner anticipates that his detention—which is now approaching four years—could stretch on for "another six to nine months" while the BIA considers the government's appeal.  Dkt. No. 1, at pg. 15.

So Petitioner now invokes this court's habeas jurisdiction.  In a petition for writ of habeas corpus, Dkt. No. 1, he contends that his ongoing detention violates the INA, insofar as the underlying conviction subjecting him to mandatory detention has been vacated.  And for similar reasons, he argues that his continued detention violates his right to substantive due process because "it is legally unjustified, and the nature and length are punitive."  *Id.* at pg. 19.  He seeks immediate release or, in the alternative, an order directing Respondents to provide him with a bond hearing at which the government would bear the burden of proving that Petitioner is a flight risk or danger to the community by clear and convincing evidence.

After reviewing the petition, the court ordered Respondents to address whether they believed that any factual or legal basis existed to "substantively distinguish this case" from *Rodriguez Nunez v. Arteta*, No. 25-cv-9225, 2025 WL 3458587 (S.D.N.Y. Dec. 2, 2025), and whether there was any reason to believe that *Rodriguez Nunez* was wrongly decided.  Dkt. No. 5.  Respondents timely responded, Dkt. No. 6, and noted in their response that they sought no further opportunities to offer fuller briefing on any other issue presented in the petition.  After Petitioner replied, Dkt. No. 7, the court sought one further factual clarification as to whether, "[a]s a matter of fact, . . . the April 8, 2026 order terminating Petitioner's removal proceedings ha[s] been stayed."  Dkt. No. 9. Respondents again timely responded and indicated that the April 8 order had indeed been stayed by regulation, Dkt. No. 10, a point with which Petitioner agreed as a matter of fact, Dkt. No. 11.

## DISCUSSION

As the court noted in its June 9 order, the petition in this case "appears to raise issues previously addressed by the district court in *Rodriguez Nunez*."  Dkt. No. 5. Respondents have sought to distinguish that case on factual and legal grounds, and have also argued against the soundness of its reasoning.  But the court concludes that *Rodriguez Nunez* provides a solid analytical framework to apply to this case.  And like the court in *Rodriguez Nunez*, it will grant the petition and order Petitioner's release.

7

1.   In *Rodriguez Nunez*, the district court considered the habeas petition of a noncitizen who had been granted lawful permanent residence in 2015 before being convicted of tampering with evidence in violation of New Jersey law in 2018.  2025 WL 3458587 at *1.  Rodriguez Nunez was subsequently detained and placed into removal proceedings on the grounds that his 2018 conviction was a "crime involving moral turpitude," rendering him inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I).  He was subsequently ordered removed by an IJ and appealed that decision to the BIA.  But while in detention pending the outcome of his appeal, something changed:  the Superior Court of New Jersey vacated his 2018 conviction on the basis that it had been obtained in violation of his due process rights.  So Rodriguez Nunez filed a motion to remand or to terminate the removal proceedings, and shortly thereafter filed a petition for writ of habeas corpus.  *Id.*

The government opposed the petition on jurisdictional grounds as well as on the merits.  First, it argued that the court lacked jurisdiction to hear the case pursuant to the jurisdiction-stripping provisions of the INA, 8 U.S.C. §§ 1252(a)(5) and (b)(9), which make the petition for review process the exclusive means to challenge an order of removal.  In the government's view, Rodriguez Nunez's petition was a "back-door challenge to his removal case," insofar as his petition was "based on the vacatur of his 2018 conviction," which was "*also* the basis for his removal."  *Id.*  But the court rejected that argument, observing that the jurisdictional inquiry "turns on 'the substance of the

8

relief that a plaintiff is seeking.'"  *Id.* (quoting *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)).  And it noted that "the relief that Rodriguez Nunez seeks on his habeas petition—release from confinement during his removal proceedings—is distinct from the relief he seeks in his removal case—not being removed from the country."  *Id.* at *2. So although the jurisdictional bar of § 1252(a) might have kicked in, for example, if Rodriguez Nunez had "argued lack of removability as the sole ground to challenge his detention," that was not the question presented by his habeas petition; he was instead "challeng[ing] the relevant detention statute's applicability by its own terms."  *Id.*  The court thus had jurisdiction to consider Rodriguez Nunez's habeas petition.

The court then turned to the merits.  Observing that Respondents' only justification for detention was 8 U.S.C. § 1225(b)(2)(A)—which mandates detention for any noncitizen who is "an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted"—it teed up the "key question" of whether Rodriguez Nunez could be considered as "seeking admission" under § 1225(b)(2)(A).  And noting that a lawful permanent resident could not be regarded as "seeking admission" *unless* they had "committed an offense identified section 1182(a)(2)," 8 U.S.C. § 1101(a)(13)(C), the court further narrowed the inquiry to "whether Rodriguez Nunez has committed such an offense."  *Id.*  It was undisputed that the 2018 offense was a qualifying conviction under § 1182, and that the conviction had since been vacated.  The question before the court

9

therefore ultimately came down to "whether the 2018 conviction is still valid for immigration purposes despite its vacatur," such that Rodriguez Nunez could be considered to have "'committed' a disqualifying offense" under the INA.  *Id.*

The court acknowledged that under Second Circuit law, a conviction that is vacated "solely for rehabilitative reasons and to avoid adverse immigration consequences . . . remains valid for purposes of establishing removability."  *Id.* (quoting *Sutherland v. Holder*, 769 F.3d 144, 147 (2d Cir. 2014)).  In the absence of any argument or authority to the contrary, the court assumed the same rule would apply in the detention context as well.  Applying that rule, it concluded that because the vacatur was "based on due process violations of the United States and New Jersey constitutions" and not just intended for rehabilitation purposes or the avoidance of adverse immigration consequences, it remained valid for detention purposes.  *Id.*  The court therefore concluded that, in light of the vacatur, "Rodriguez Nunez's conviction no longer qualifies him as an alien 'seeking an admission' under 8 U.S.C. § 1101(a)(13)(C)," and that "since the sole basis for detention rests on him being an alien 'seeking admission' under § 1225(b)(2)(A), respondents can't justify his continued detention."  *Id.*

2.  As in *Rodriguez Nunez*, Respondents have opposed the petition in this case on jurisdictional grounds as well as on the merits—arguments which the court addresses below.  But they have also argued that this case is altogether distinguishable from *Rodriguez Nunez*, since (1) Rodriguez Nunez was classified as an "arriving alien" and

therefore detained under § 1225, unlike Petitioner, who undisputedly remains a lawful permanent resident pending the outcome of his removal proceedings and who is therefore detained under § 1226; (2) Rodriguez Nunez had never received the "chance to have the government justify his detention at a bond hearing," unlike Petitioner, who has received multiple bond hearings; and (3) as a case decided in the Southern District of New York, *Rodriguez Nunez* was decided based on Second Circuit precedent, which the government contends differs from Ninth Circuit precedent insofar as the latter bars courts from exercising habeas jurisdiction over any challenge that is "inextricably linked to an order of removal."  Dkt. No. 6, at pgs. 1-2.

The court is not persuaded that these points of differentiation offer a meaningful basis to distinguish this case from *Rodriguez Nunez*.  As Petitioner notes, the "statute that petitioner was detained under and whether he previously had a bond hearing was of no consequence to the holding of [*Rodriguez Nunez*], which was that ICE lacks the authority to detain a lawful permanent resident whose sole removable conviction has been properly vacated under state law."  Dkt. No. 8, at pg. 3.  The court agrees.  Both cases turn on the resolution of the same basic issue:  if Petitioner can show that there is no qualifying criminal conduct subjecting him to mandatory detention pursuant to the statute invoked as the "sole basis for detention" under INA, then Respondents "can't justify his continued detention."  *Rodriguez Nunez*, 2025 WL 3458587, at \*3.  The fact that this case involves § 1226(c) rather than § 1225 and that Petitioner has previously

11

received bond hearings does not affect the analysis or resolution of that issue in any meaningful way.

Respondents' argument that *Rodriguez Nunez* is distinguishable because it relied on Second Circuit jurisprudence is equally unavailing.  Ninth Circuit law—including the case cited by Respondent as support for its argument—uses the same framework that underpinned the jurisdictional analysis in *Rodriguez Nunez*.  *See Martinez v. Napolitano*, 704 F.3d 620, 622-23 (9th Cir. 2012) (adopting the approach of the Second Circuit).  So while the Ninth Circuit has indeed interpreted § 1252(a)(5) to bar those challenges "inextricably linked" to removal orders, Dkt. No. 6, at pg. 2 (quoting *Martinez*, 704 F.3d at 623), it has emphasized that the bar "applies only to judicial review of an order of removal and does not eliminate the ability of a court to review claims that are independent of challenges to removal orders."  *Martinez*, 704 F.3d at 622 (cleaned up).  And it has explained that "the distinction between an independent claim and indirect challenge 'will turn on the substance of the relief that a plaintiff is seeking'"—a distinction that is drawn directly from Second Circuit caselaw.  *Id.* (quoting *Delgado*, 643 F.3d at 55).

Here, as in *Rodriguez Nunez*, the petition before the court challenges only Respondent's detention of Petitioner, not the underlying removal proceedings.  As Petitioner points out, he "is not asking this Court to make any findings in his removal case," as that decision "is on appeal at the BIA and can continue its course of action

12

independent of [his] detention status."  Dkt. No. 8.  That is to say, Petitioner does not here argue that the government lacks a basis under 8 U.S.C. § 1227(a)(2)(E)(ii) or any other statutory provision to order him removed; he properly leaves that issue for the BIA to consider on appeal.  His only challenge relates to "whether his custody is lawful."  *Id.*  His contention, in other words, is simply that Respondents lack authority to detain him while they seek his removal.  As in *Rodriguez Nunez*, Petitioner's "current detention doesn't have anything to do with the outcome of his removal case."  2025 WL 3458587, at *2.  And so the court has jurisdiction to consider Petitioner's habeas challenge to that detention.  *Accord Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007) (recognizing that district courts retain habeas jurisdiction to consider "challenges to detention that are *independent of challenges to removal orders*" (quoting House Report)).

Respondents raise only one other argument in opposition to the petition:  that it should be dismissed for failure to exhaust administrative remedies.  Dkt. No. 6, at pg. 1 n.1.  Exhaustion of administrative remedies may be required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."  *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (cleaned up).  But the exhaustion requirement is prudential rather than jurisdictional, so the court may use its discretion to excuse

exhaustion in situations where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (cleaned up).

Here, Petitioner did attempt to exhaust his administrative remedies.  In March 2025, Petitioner received a *Matter of Joseph* hearing at which he had "the opportunity to contest whether the government 'properly included [him] within a category that is subject to mandatory detention.'"  *J.P. v. Garland*, 685 F. Supp. 3d 943, 947 (N.D. Cal. 2023) (quoting *Matter of Joseph*, 22 I. & N. Dec. at 805).  Bond was denied at that hearing based on a finding of dangerousness arising out of Petitioner's criminal activity.  *See* Dkt. Nos. 1-9, 1-11.  And so after his state court conviction was vacated and his removal proceedings were terminated, Petitioner "attempted to request a [new] *Matter of Joseph* hearing," at which he would have argued that he was "no longer subject to mandatory detention under 8 U.S.C. § 1226(c)" based on the vacatur of his conviction.  Dkt. No. 8, at pg. 9; *see also* Dkt. No. 1-7.  But the IJ refused to grant Petitioner a hearing, finding that he had "failed to show materially changed circumstances" insofar as he had "not submitted any new, previously unavailable evidence that his circumstances have changed materially" since his last *Matter of Joseph* hearing.  Dkt. No. 1-6, at pg. 1 (citing 8 C.F.R. § 1003.19(e) and *Matter of Uluocha*, 20 I. & N. Dec. 133, 134 (BIA 1989)).

It is difficult to understand the IJ's refusal to grant a new *Matter of Joseph* hearing on that basis. Petitioner's primary argument was that the December 2025 vacatur of his state court conviction rendered him ineligible for detention under § 1226(c). And since that vacatur came roughly nine months after the initial *Matter of Joseph* hearing was held in March 2025, it must have been "previously unavailable" at that earlier hearing, because it literally did not exist at the time. This record suffices to show that further pursuit of administrative remedies would be inadequate, ineffective, futile, or would result in irreparable injury. It also shows that Petitioner in no way sought to deliberately bypass the administrative scheme. And in any event, the issues Petitioner presents here are purely legal in nature; they do not fall within the agency's expertise or require affording the agency an opportunity to develop a further record. The court therefore declines to require Petitioner to further exhaust his administrative remedies before considering the merits of his petition. *See Laing*, 370 F.3d at 1000.

3. Turning to the merits, the court considers whether Petitioner has a qualifying conviction that would subject him to mandatory detention under § 1226(c). The only issue that appears to be in dispute is whether Petitioner's contempt conviction renders him subject to detention pursuant to § 1226(c).[2] And as the Ninth Circuit has repeatedly

---

[2]     Respondents have submitted Petitioner's "rap sheet," which reflects convictions for misdemeanor battery in 2017; misdemeanor obstruction of a public officer and for taking a vehicle without owner consent in 2020; misdemeanor DUI in 2021; the aforementioned felony assault with a non-firearm deadly weapon (which, based on the Ninth Circuit's decision in *Gomez*, does not qualify as a categorical aggravated felony);

stated, a "conviction vacated because of a 'procedural or substantive defect' is not considered a 'conviction' for immigration purposes." *Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1107 (9th Cir. 2006) (quoting *Matter of Pickering*, 23 I. & N. Dec. 621, 624 (BIA 2003), *rev'd on other grounds by Pickering v. Gonzales*, 454 F.3d 525 (6th Cir. 2006)); *see also Nath v. Gonzales*, 467 F.3d 1185, 1189 (9th Cir. 2006).  Here, Petitioner's contempt conviction was vacated "pursuant to [Cal.] Penal Code section 1473.7(a)(1) . . . based on the legal invalidity of [his] prior plea based on a prejudicial error damaging [his] ability to meaningfully understand or knowingly accept the actual or potential adverse immigration consequences of his guilty plea."  Dkt. No. 1-7, at pg. 24.  That rendered his plea "procedurally or substantively defective, legally invalid, and in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution at the time of the original entry of the plea," and therefore required the vacatur of his conviction. *Id.*; *see Padilla v. Kentucky*, 559 U.S. 356 (2010) (holding that the Sixth Amendment requires defense counsel to inform their client whether a guilty plea carries a risk of deportation).

The record before the court strongly supports the conclusion that Petitioner's contempt conviction was vacated based on procedural and substantive defects, and

---

and misdemeanor trespass (which was entered in 2026 in place of Petitioner's now-vacated contempt conviction).  *See* Dkt. No. 6-3.  They have not argued, however, that any of these convictions render Petitioner subject to mandatory detention under § 1226(c), so the court accordingly focuses its analysis on the significance of the vacated contempt conviction, as that appears to be the locus of the dispute between the parties.

16

Respondents have not made any contrary showing that the vacatur was granted for rehabilitative reasons or to avoid adverse immigration consequences. *See Reyes-Torres v. Holder*, 645 F.3d 1073, 1077 (9th Cir. 2011). Indeed, the Ninth Circuit has held that the provision of California law under which vacatur was entered addresses only those convictions infected by a "substantive or procedural error that renders a conviction 'legally invalid.'" *Bent v. Garland*, 115 F.4th 934, 940-41 (9th Cir. 2024) (quoting Cal. Penal Code § 1473.7(a)(1)). The vacatur therefore renders Petitioner's conviction invalid for immigration purposes.

The upshot of Petitioner's conviction being rendered invalid for immigration purposes is that he has no qualifying conviction subjecting him to mandatory detention under § 1226(c). *Accord Aguilar v. Andrews*, No. 1:26-cv-03028, 2026 WL 1469800, at *2 (E.D. Cal. May 26, 2026); *Haji S. v. Barr*, Civ. No. 18-3493, 2019 WL 3238354, at *3 (D. Minn. July 18, 2019) (explaining that "[i]f Petitioner is no longer a criminal alien as defined under the relevant statutes, then he is not subject to detention under those statutes" once "the criminal convictions that placed him within the scope § 1226(c) ha[d] been vacated"). Respondents therefore cannot continue to detain Petitioner under § 1226(c).

4. Perhaps there exists some other provision that might have justified Petitioner's continued detention here. After all, as the parties agree, the IJ's April 8, 2026, order terminating Petitioner's removal proceedings has been stayed. It follows

17

that Petitioner's removal proceedings remain ongoing and that Respondents might, therefore, have been able to cite some other lawful authority to continue Petitioner's detention while the proceedings continue.

But despite the court affording Respondents a full opportunity to identify any lawful basis for Petitioner's detention apart from § 1226(c), *see* Dkt. No. 5, Respondents have offered none. Because Respondents have offered no other lawful basis for Petitioner's detention—and because their only asserted ground, § 1226(c), is improper— the court must order his immediate release. *Accord Rodriguez Nunez*, 2025 WL 3458587; *see also Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. 2025) (ordering immediate release where "the government [did] not assert any other basis for petitioner's detention"); *Ramos v. Warden, Cal. City Corr. Ctr.*, No. 2:26-cv-01026, 2026 WL 836368, at *2 (E.D. Cal. Mar. 26, 2026) (finding that "the appropriate remedy is petitioner's immediate release where, as here, respondents have failed to provide authority for petitioner's detention"); *Grimaldo v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-03878, 2026 WL 1491334, at *1 (E.D. Cal. May 27, 2026) (explaining that where a petitioner had been invalidly detained under one statute and the government "has identified no other authority for his detention, the appropriate remedy is to order petitioner's immediate release").

Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED. Respondents are ORDERED to immediately release

Petitioner Vrej S.G. (A# 212-109-986) from their custody.  Respondents shall not impose

any additional restrictions on Petitioner, unless that is determined to be necessary at a

future pre-deprivation/custody hearing.  Respondents are permanently ENJOINED

AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance

with constitutional protections, which include, at a minimum, pre-deprivation notice

describing the change of circumstances necessitating Petitioner's arrest and detention,

and a timely hearing.  At any such hearing, the government shall bear the burden of

establishing, by clear and convincing evidence, that Petitioner poses a danger to the

community or a risk of flight, and Petitioner shall be allowed to have counsel present.

In addition, the government must assert a proper statutory basis for seeking Petitioner's

detention.  This order does not address the circumstances in which Respondents may

detain Petitioner in the event Petitioner becomes subject to an executable final order of

removal, or in the event exigent or urgent circumstances arise that justify arresting and

detaining Petitioner before pre-deprivation process can be provided.

Given the grant of the petition, Petitioner's Motion for Temporary Restraining

Order, Dkt. No. 4, is DENIED as moot.  The Clerk of Court is directed to close this case

and enter judgment for Petitioner.

//

//

//

19

IT IS SO ORDERED.

DATED:  July 15, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

---

Civil No. 1:26-cv-04428-MWJS; *Vrej S.G. v. Christopher Chestnut*, et al.; ORDER
GRANTING PETITION FOR WRIT OF HABEAS CORPUS